**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

FILED
2014 APR -3  AM 9: 29

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
DEPUTY

UNITED STATES OF AMERICA,
                        **Petitioner,**

-vs-                                                    Case No.  A-14-CA-113-SS

$78,700.00,  MORE  OR  LESS,  IN  UNITED
STATES CURRENCY,
                        **Respondent.**

---

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Petitioner United States of America's Verified Complaint for Forfeiture [#1], Claimant Robert Guerin's Motion to Dismiss [#4], and Petitioner's Response [#6].  Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

### Background

This action is brought by the United States of America (the United States) seeking forfeiture to the United States of property seized at the Austin Bergstrom International Airport (ABIA).  The United States asserts the following factual background in its Verified Complaint.

On or about November 12, 2013, Austin Police Department (APD) officers were alerted by Transportation Security Administration (TSA) agents of a carry-on bag belonging to Robert Denis Guerin, which contained a large sum of cash at ABIA.  The TSA had observed a "layered mass" through the X-ray machine in the carry-on bag and requested a secondary search of the bag.  There

were three bundles of cash located in the bag, each located in a heat-sealed plastic bag and placed into a separate manila envelope.  The envelopes were stamped and addressed to Bob Guerin, 770 A Great Highway, San Francisco, California 94121.

APD officers questioned Guerin about the cash, and he told them there was approximately $78,700.00 in the bag.  He explained the money was from his company which buys and sells cars and also from his inheritance from his father who had recently died.  Guerin clarified that $60,000.00 remained from his inheritance.  He also told the officers his company name was known by his name: "Bob Guerin."  Guerin was unable to produce any receipts or documentation associated with the large amount of cash, and he explained the cash was bundled and in envelopes because he had originally planned to mail it to himself.  He then changed his flight and decided to carry the cash with him to San Francisco.  When the officer pointed out Guerin's flight was to Oakland, Guerin stated he had changed his flight information on the way to the airport and planned to buy a new ticket to San Francisco with the cash.

Due to these suspicious circumstances, the officers dispatched a drug dog to the scene to inspect the envelopes containing the cash to determine if the money contained the presence or odor of illegal narcotics.  The officers told Guerin he could (a) leave to catch his flight without the money or (b) stay with the money and wait until the drug dog completed the inspection.  Guerin elected to leave on his scheduled flight without the money.  The officers removed the three envelopes containing the cash from the carry-on bag and returned the bag to Guerin along with a receipt for the money.

When the drug dog arrived at the scene, he was introduced to the three envelopes containing the cash, and he gave a positive alert for the presence of illegal narcotics on the envelopes.  The

envelopes were then removed to a separate and secure location to count the currency. Upon opening the vacuum-sealed bags, the officers immediately recognized a strong odor of marijuana emanating from the bags, and they recognized this smell from each of the three bags containing the cash.

In counting the money in each bag, the officers found: (1) the first envelope contained twenty-five rubber-banded bundles, totaling $28,000.00; (2) the second envelope contained fourteen rubber-banded bundles, totaling $36,700.00; and (3) the third envelope contained thirteen rubber-banded bundles, totaling $13,000.00. In total the officers found $78,700.00, more or less, in United States currency (the Respondent Property).

After querying the Texas Workforce Commission records, officers discovered Guerin had no reported income or employment. On or about January 13, 2014, IRS agents interviewed Guerin's mother, Frances Guerin, regarding Guering's allegation that $60,000.00 of the Respondent Property constituted inheritance from his father. Frances stated she was unaware of any seizure of the Respondent Property from Guerin. To her knowledge, her son was involved in a computer business, and he would occasionally buy and sell classic cars. Frances confirmed Guerin's father (Robert P. Guerin, who was her ex-husband) had died in September 2013. While Robert P. Guerin owned a business, Frances stated that, due to his illness, the business had suffered financially in the years preceding his death. Therefore, Frances was unaware of any large sum of money given to Guerin as inheritance because the business had incurred so much debt. Frances further stated if there had been a disbursement of money from Robert P. Guerin's will, she would have been aware of it.

The United States in its Verified Complaint represents law enforcement is aware of a recent increase in the amount of high-quality marijuana being smuggled into Austin from California, and

law enforcement has seen an associated increase in the number of cash seizures at ABIA related to illegal narcotics trafficking from California.

Based on this information, the United States contends the facts and circumstances of this case would lead a reasonable person to believe the Respondent Property represents property involved in or used to facilitate unlawful drug crimes, given the bundling of the cash, the packaging of the cash in heat-sealed bags, the positive drug alert on the packages, the strong odor of marijuana emitted from the sealed bags, the lack of employment or earnings to support possession of such a large amount of cash, and the recent trend in drug interdiction activities, demonstrating a rise in drug and cash smuggling between Austin and California.

Based on this conclusion, the United States initiated this action, filing its Verified Complaint on February 4, 2013, because it believes the Respondent Property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), arguing the Respondent Property constitutes proceeds furnished or intended to be furnished, or intended to be used to facilitate an exchange for a controlled substance in knowing violation of 21 U.S.C. §§ 801 *et seq.*

Guerin, as Claimant, has filed a Motion to Dismiss arguing the United States did not timely file its civil forfeiture action or send written notice to all interested parties. Also, Guerin contends the Verified Complaint should be dismissed under Rule 12(b)(6) for failure allege sufficient facts to support its claim.

## Analysis

### I.      Rule 12(b)(6) and Civil Forfeiture Pleading Standards

Federal Rule of Civil Procedure 8(a)(2) requires a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A

motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In deciding a motion to dismiss under 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although a plaintiff's factual allegations need not establish the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id.* Determining plausibility is a "context-specific task," that must be performed in light of a court's "judicial experience and common sense." *Id.* at 679. In deciding a motion to dismiss, courts may consider the complaint, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

In a civil forfeiture action, the complaint must also meet the heightened pleading requirements set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Rule G(2) requires, *inter alia*, the complaint "state sufficiently detailed

facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." FED. R. CIV. P., at Supp. R. G(2)(f). Thus, the standard to be applied to a civil forfeiture complaint is more stringent than the general pleading requirements under the Federal Rules of Civil Procedure. *See, e.g., U.S. v. $49,000 Currency*, 330 F.3d 371, 375 n.8 (5th Cir. 2003).

The United States is not, however, required to have sufficient evidence at the time it files its complaint to establish the forfeitability of the property. 18 U.S.C. § 983(a)(3)(D) ("No complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property."); *see also* Supp. R. G(8)(b)(ii) ("In an action governed by 18 U.S.C. § 983(a)(3)(D) the complaint may not be dismissed on the ground that the government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property. The sufficiency of the complaint is governed by Rule G(2).").

Instead, the Government must plead "the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." *U.S. v. Mondragon*, 313 F.3d 862, 865 (4th Cir. 2002) (quoting Supplemental Rule E(2)(a)).

## II.    Application

Guerin pursues two arguments in support of his motion to dismiss: (1) the United States did not timely initiate this lawsuit; and (2) the alleged facts do not withstand 12(b)(6) scrutiny.

First, concerning the timeliness of the United States' filing, Guerin argues "[p]ursuant to Rule 18 U.S.C. Section 983(a)(1)(A)(i), the government is required to file a civil forfeiture action or send written notice to all interested parties 'as soon as practicable, and in no case more than 60 days after the date of seizure.'" Claimant's Mot. Dismiss [#4], at 1 (quoting 18 U.S.C. § 983(a)(1)(A)(i))).

Because the date of seizure in this case was November 12, 2013, and the Notice of Complaint for Forfeiture is dated February 4, 2014 (eighty-four days after the seizure), Guerin contends the United States has failed to comply with the filing rules. Moreover, Guerin points out the signature on the Notice is dated as "sent" on February 11, 2014 (ninety-one days after the seizure), and the Notice was not actually sent out until February 19, 2014 (ninety-nine days after the seizure).

Guerin is incorrect. As the United States points out in its Response, the 60-day notice deadline in 18 U.S.C. § 983(a)(1)(A)(i)) does not apply to civil judicial forfeiture actions like the instant case, but rather to *nonjudicial* civil forfeiture proceedings. Section 983 sets forth the procedures and deadlines for the United States to commence a nonjudicial (i.e., administrative) forfeiture action. The statute provides, in relevant part:

> Except as provided in clauses (ii) through (v), **in any nonjudicial civil forfeiture proceeding** under a civil forfeiture statute, with respect to which the Government is required to send written notice to interested parties, such notice shall be sent in a manner to achieve proper notice as soon as practicable, and in no case more than 60 days after the date of seizure.

18 U.S.C. § 983(a)(1)(A)(i) (emphasis added). Thus, in order to *administratively* forfeit property, the United States must send notice to interested parties within 60 days of seizure.

Section 983(a)(1)(A)(i) does not apply where the United States elects to seek *civil judicial* forfeiture, as in this case, or criminal judicial forfeiture. *See Celata v. U.S.*, 334 F. App'x 801, 802 (9th Cir. 2009) (holding deadlines under § 983(a)(1)(A)(i) apply only where the government commences a nonjudicial forfeiture proceeding); *see also Chaim v. U.S.*, 692 F. Supp. 2d 461, 466 (D.N.J. 2010) (same); *U.S. v. Assets Described in "Attachment A"*, No. 6:09-CV-1852-ORL-28GJK, 2010 WL 1893327, at *6 (M.D. Fla. May 11, 2010) (same); *Langbord v. U.S. Dep't of Treasury*, 645 F. Supp. 2d 381, 389 (E.D. Pa. 2009) (same); STEFAN D. CASELLA, ASSET FORFEITURE LAW IN THE

UNITED STATES § 7-4(h)(1) (2d ed. 2012) (explaining § 983(a) "contains no deadline governing when the Government must commence judicial forfeiture proceedings if there is no preceding administrative forfeiture").[1]

In the instant case, the United States did not pursue administrative forfeiture proceedings; instead, the United States proceeded directly to a civil judicial action. Therefore, Guerin's reliance on the time limit provided in § 983(a)(1)(A)(i) is misplaced, and the Court rejects the 60-day deadline urged by Guerin. The Court also notes this action was commenced within the DOJ's recommended 150-day deadline. Guerin's motion to dismiss is DENIED with respect to his argument concerning the timeliness of the United State's filing of this action.

Second, Guerin seeks dismissal of the action because "there are no facts which have been presented to this Claimant, which would form a basis to provide relief to Petitioner." Claimant's Mot. Dismiss [#4], at 2. Beyond this conclusory statement, Guerin provides nothing in support of his argument. Moreover, the Court concludes the United States has pleaded sufficient factual allegations to meet pleading standards.

Taking the United States' alleged facts as true, they would lead a reasonable person to believe the Respondent Property represents property involved in or used to facilitate unlawful drug crimes, given the bundling of the cash, the packaging of the cash in heat-sealed bags, the positive drug alert on the packages, the strong odor of marijuana emitted from the sealed bags, the lack of employment or earnings to support possession of such a large amount of cash, and the recent trend in drug interdiction activities, demonstrating a rise in drug and cash smuggling between Austin and

---

[1] The author further explains in 2007 the U.S. Department of Justice (DOJ) issued a policy providing that a case should be filed within 150 days of seizure if the case could have been handled administratively. *See* CASELLA, ASSET FORFEITURE LAW IN THE UNITED STATES AT § 7-4(h)(1).

California.   With these allegations, the United States has "plead[ed] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Furthermore, these allegations have allowed Guerin, "without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." *Mondragon*, 313 F.3d at 865.  Guerin's motion to dismiss is DENIED with respect to his argument the United States has failed to plead sufficient facts.

**Conclusion**

Accordingly,

IT IS ORDERED that Claimant Robert Guerin's Motion to Dismiss is DENIED.

SIGNED this the 2nd day of April 2014.

SAM SPARKS
UNITED STATES DISTRICT JUDGE